**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHARLINE SMITH-THOMPSON,     :
          :
         Plaintiff,     :     Civil Action No.:   09-0046 (RMU)
          :
         v.     :     Re Document No.:  2
          :
DISTRICT OF COLUMBIA,     :
          :
         Defendant.     :

<u>**MEMORANDUM OPINION**</u>

**DENYING THE DEFENDANT'S MOTION TO DISMISS; DENYING WITHOUT PREJUDICE
THE DEFENDANT'S MOTION IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter is before the court on the defendant's motion to dismiss or, in the

alternative, for summary judgment. The plaintiff, a female correctional officer stationed

at the District of Columbia Jail, alleges that the defendant permitted her to be sexually

harassed by a fellow officer and retaliated against her in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the D.C. Human Rights

Act ("DCHRA"), D.C. Code §§ 2-1401.01 *et seq.* The plaintiff has also asserted a claim

for intentional infliction of emotional distress ("IIED"). The defendant moves to dismiss

or, in the alternative, for summary judgment, arguing that the plaintiff's Title VII sexual

harassment claims are time-barred, that the plaintiff has failed to state a claim for

retaliation under Title VII, that the plaintiff failed to exhaust her administrative remedies

with respect to certain of her retaliation claims and that the doctrine of res judicata bars

the plaintiff's DCHRA and IIED claims.

For the reasons discussed below, the court denies the defendant's motion to

dismiss the Title VII sexual harassment claims as time-barred and denies without

prejudice the defendant's motion in the alternative for summary judgment.  In addition,

the court denies the defendant's motion to dismiss the plaintiff's retaliation claims for

failure to state a claim and failure to exhaust her administrative remedies.  The court,

however, grants as conceded the defendant's motion to dismiss the DCHRA and IIED

claims.

## II.  BACKGROUND

### A.  Factual Allegations

The plaintiff is a female correctional officer who has been stationed at the District

of Columbia Jail since 1989.  2d Am. Compl. ¶ 6.  After being laid off due to a reduction

in force in 2002, she was rehired in September 2004.  *Id.* ¶ 7.  Upon returning to duty, the

plaintiff began working alongside correctional officer Pablo Rodriguez.  Both officers

were supervised by Sergeant Luis Stephens.  *Id.* ¶¶ 8-10.

The plaintiff alleges that "soon after" she began working with Rodriguez in 2004,

he began to sexually harass her.  *Id.* ¶ 11.  As alleged in the complaint, Rodriguez

repeatedly directed comments of a sexual nature toward the plaintiff.  *Id.* ¶¶ 18-20.  On

one occasion, Rodriguez allegedly grabbed the plaintiff and "tried to push her head into

his 'private parts.'"  *Id.* ¶ 11.  On yet another occasion, Rodriguez allegedly called the

plaintiff asking her about oral sex while broadcasting the call over the intercom.  *Id.*

The plaintiff alleges that she complained about Rodriguez's behavior to Sergeant

Stephens, who admonished Rodriguez to discontinue his behavior and persuaded the

plaintiff to give Rodriguez another chance.[1]  *Id.* ¶¶ 12-13.  Rodriguez, however, persisted

in his harassing conduct.  *Id.* ¶ 13.  In June 2005, the plaintiff brought her complaints to

the attention of Lieutenant Gloria Profit, who allegedly informed the plaintiff that there

was nothing she could do about Rodriguez's behavior.  *Id.* ¶ 15.  The plaintiff then sent

an e-mail to Deputy Warden Larry Corbett regarding Rodriguez's behavior.  *Id.* ¶ 16.

Corbett allegedly informed the plaintiff that all employees alleging sexual harassment

were required to proceed through the Office of the Special Inspector, which had been

established by court order to address the D.C. Department of Correction's ("DOC")

failure to enforce its policy against sexual harassment and retaliation.  *See Neal v. Dir.,*

*D.C. Dep't of Corr.*, 1995 WL 517244, at *2-3 (D.D.C. Aug. 9, 1995) (Lamberth, J.).

The plaintiff alleges that Corbett stated that the Office of the Special Inspector was her

sole avenue of filing a complaint regarding Rodriguez's behavior.  Pl.'s Aff. ¶ 4.  The

plaintiff alleges that Profit and other supervisors also advised her that she was required to

proceed through the Special Inspector.  2d Am. Compl. ¶ 17.  The plaintiff filed a

complaint with the Special Inspector on June 19, 2005, which commenced an

investigation into the plaintiff's allegations.  Pl.'s Aff. ¶¶ 3-4; Pl.'s Opp'n at 6.

     The plaintiff alleges that throughout this period, Rodriguez continued to sexually

harass her.  2d Am. Compl. ¶¶ 18-20.  She alleges that nearly every time she spoke to

Rodriguez, he would respond with sexual innuendo, and that this behavior occurred every

weekend the plaintiff worked with Rodriguez.  *Id.* ¶ 20.  The plaintiff alleges that

Rodriguez's behavior caused her to be nervous and forced her to leave her work station

---

[1]    The investigative report created by the Department of Correction's Office of the Special Inspector states that the plaintiff's "allegations of conduct in 2005 were resolved in mediation and voluntarily dismissed by both parties."  Pl.'s Opp'n, Ex. 2 at 3.  The parties do not address the effect, if any, of the prior voluntary dismissal on the instant action.  *See generally* Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply.

for prolonged periods to avoid being around Rodriguez, for which she was reprimanded. *Id*. ¶¶ 21-22.  The plaintiff alleges that she endured this behavior from Rodriguez from September 2004 to June 2005.  Pl.'s Aff. ¶ 2.

On March 20, 2006, the Special Inspector concluded its investigation and generated a report recommending that "a probable cause finding be made with regard to the claim of hostile work environment."  Pl.'s Mot., Ex. 2 at 22.[2]  After receiving the Special Inspector's report, the plaintiff contacted the District of Columbia Office of Human Rights ("DCOHR") in late March or early April 2006 to determine what steps she needed to take to enforce her rights.  Pl.'s Aff. ¶ 7.  The plaintiff was allegedly told by a DCOHR employee that because she had already received a favorable finding from the Office of the Special Inspector, she was not permitted to file a complaint with the DCOHR.  *Id*.

On May 21, 2006, the plaintiff alleges that she was forced to stop working because she was experiencing headaches, chest pain and depression.  2d Am. Compl. ¶ 39.  In July 2006, a DOC psychiatrist diagnosed the plaintiff with Major Depressive Disorder.  *Id*. ¶ 34.  The psychiatrist recommended that the plaintiff be separated from working with Rodriguez "because her symptoms [were] related to Mr. Rodriguez's harassing conduct in the workplace."  *Id*. ¶ 35.  The psychiatrist further recommended that the plaintiff take a three- to four-week absence for treatment and then be returned to light duty.  *Id*.  The plaintiff, however, was placed on absent without leave ("AWOL") status, meaning that she was not paid during her absence.  *Id*. ¶¶ 40-41.  The plaintiff alleges that she was ordered to report back to work on November 27, 2006 and that upon

---

[2]      The parties do not specify what remedial action, if any, the Special Inspector recommended.

her return, she was harassed and retaliated against by her co-workers and supervisors.  *Id.*

¶ 42.  Within two hours of reporting to work, a supervisor instructed her to go home,

which she did.  *Id.*

## B.  Procedural History

On August 11, 2006, the plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC").  Def.'s Mot., Ex. 4.  The

administrative charge indicates that she simultaneously cross-filed the charge with the

DCOHR.  *Id.*  On August 17, 2006, the plaintiff filed a complaint in the Superior Court

for the District of Columbia against Rodriguez and the District of Columbia ("the

District"), alleging sexual harassment and retaliation under Title VII and the DCHRA,

IIED against the District and assault and battery against Rodriguez.  *See* Def.'s Mot., Ex.

1.  On November 14, 2006, the District removed the case to federal court.  *Id.* at 1.  The

plaintiff subsequently withdrew her Title VII claims for failure to exhaust her

administrative remedies, and the case was remanded to the Superior Court, at which time

the plaintiff filed an amended complaint.  *Id.* at 1-2 & Ex. 2.

The plaintiff received a right to sue letter from the EEOC on November 17, 2008.

2d Am. Compl. ¶ 31.  On December 2, 2008, the plaintiff moved in the Superior Court

for leave to file a second amended complaint incorporating her Title VII claims.  Def.'s

Mot. at 2.  The Superior Court granted the plaintiff's motion.  *Id.*, Ex. 3.  At the same

time, however, the Superior Court granted the District's motion to dismiss the DCHRA

and IIED claims asserted against it.  *Id.* at 2 & Ex. 3.

On January 8, 2009, the District again removed this case to federal court based on

federal question jurisdiction.  *See* Notice of Removal.  The defendant filed the instant

motion on January 15, 2009.  *See generally* Def.'s Mot.  On May 15, 2009, the plaintiff

filed a notice of dismissal of her claims against Rodriguez, leaving the District as the sole

remaining defendant in this case.  *See* Line of Dismissal as to Defendant Rodriguez Only.


## III.  ANALYSIS

### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set

forth a short and plain statement of the claim, giving the defendant fair notice of the

claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348

F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*,

355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal

opportunity for discovery and the other pre-trial procedures established by the Rules to

disclose more precisely the basis of both claim and defense to define more narrowly the

disputed facts and issues."  *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted).

It is not necessary for the plaintiff to plead all elements of his prima facie case in the

complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or

match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136

(D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (abrogating the oft-quoted language

from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a

claim unless it appears beyond doubt that "no set of facts in support of his claim [] would

entitle him to relief"); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims").  While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations."  *Twombly*, 550 U.S. at 555, 557.  In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations

grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475

(D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463

n.11 (D.C. Cir. 1989)).

### B.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v.*

*Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a

court must look to the substantive law on which each claim rests.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as

true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than

"the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To

prevail on a motion for summary judgment, the moving party must show that the

nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence

proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## C. The Plaintiff's Sexual Harassment Claim

Title VII requires an employee to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice, or within 300 days of the alleged unlawful employment practice if the person aggrieved has initially instituted a proceeding with a state or local agency. 42 U.S.C. § 2000e-5(e)(1); *see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (observing that "Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge"). The purpose of the requirement is to allow "the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996). When an employee asserts a claim based on a discrete act of discrimination, he or she must file a charge within either 180 or 300 days of the act or lose the ability recover for it. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Claims based on discrete acts of discrimination that fall outside the statutory period are time-barred. *Id*.

A hostile work environment claim, on the other hand, "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id*. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  Unlike a claim premised on discrete acts of discrimination, a hostile work environment claim cannot be reduced to a single action on a single day because "[its] very nature involves repeated conduct" and it is based "on the cumulative effect of individual acts." *Id*. at 115.  For such a claim,

> [i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id*.

The defendant contends that the plaintiff's sexual harassment claims are time-barred because she failed to file her administrative complaint within 300 days of the alleged sexual harassment.  Def.'s Mot. at 5.  Although the complaint fails to provide specific dates for any particular incident of sexual harassment by Rodriguez, the plaintiff has indicated that the sexual harassment she complains of continued until June 2005.  *Id*. at 5-6.  Because the plaintiff did not file her administrative complaint until August 11, 2006 – more than 300 days later – the defendant asserts that the plaintiff's sexual harassment claims are time-barred.[3]  *Id*. at 6.  In addition, the defendant claims that equitable considerations do not excuse the plaintiff's behavior because she has failed to

---

[3]     The defendant briefly states that the plaintiff has failed to allege that she suffered an adverse employment action.  Def.'s Reply at 5.  Because this argument was raised for the first time in the defendant's reply memorandum, it will not be considered by the court.  *See Cronin v. Fed. Aviation Admin.*, 73 F.3d 1126, 1134 (D.C. Cir. 1996) (noting that "[i]t is well established that [the] court will not entertain arguments raised for the first time in a party's reply brief").

demonstrate any bad faith on the part of her supervisors or due diligence in pursuing her claim.  Pl.'s Reply at 4-5.

The plaintiff responds that the limitations period should be calculated from June 19, 2005, the date she filed a complaint with the Office of the Special Inspector, and that the defendant should be equitably estopped from asserting the statute of limitations defense because the plaintiff's supervisors directed her to file her complaint with the Office of the Special Inspector only.  Pl.'s Opp'n at 6-7.  She notes that filing the complaint with the Special Inspector satisfied the underlying rationale of Title VII's administrative exhaustion requirement, as it put the DOC on notice of her allegations and gave it an opportunity to address the situation internally.  *Id*. at 9-10.  In addition, the plaintiff asserts that dismissal would be inequitable under these circumstances, given the confusion that arose from the existence of the Office of Special Inspector – confusion that led an official within the DCOHR to rebuff the plaintiff's efforts to file an administrative complaint with that office in late March or early April 2006.  *Id*. at 8.

The administrative filing requirement "essentially functions as a statute of limitations for Title VII actions."  *Carter v. Wash. Metro. Area Transit Auth*., 503 F.3d 143, 145 (D.C. Cir. 2007).  Like a statute of limitations, the requirement "is not a jurisdictional prerequisite to filing suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982); *see also Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  The court's power to equitably excuse noncompliance with administrative filing deadlines, however, "will be exercised only in extraordinary and carefully circumscribed instances."  *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  The

plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The plaintiff bears the burden of pleading and proving equitable reasons for noncompliance with administrative filing requirements.  *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).

Equitable estoppel "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc*., 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis omitted); *see also Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (observing that courts "have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by an inaccurate or ineffective notice from a government agency required to provide notice of the limitations period").  The defendant must engage in affirmative misconduct for equitable estoppel to apply.  *Moore v. Chertoff*, 424 F. Supp. 2d 145, 150 (D.D.C. 2006) (citing *Currier*, 159 F.3d at 1367); *accord Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (providing that "[t]olling on estoppel grounds is proper . . . where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction") (quotations omitted); *Hedrich v. Bd. of Regents of Univ. of Wis. Sys*., 274 F.3d 1174, 1182 (7th Cir. 2001) (observing that "to make a claim for equitable estoppel, the plaintiff must present evidence that the defendant [took] active steps to prevent the plaintiff from suing in time").  Such misconduct typically involves "acts of wrongdoing such as hiding evidence or promising not to rely on a statute of limitations defense." *Hedrich*, 274 F.3d at 1182.

An employer does not engage in affirmative misconduct, justifying equitable estoppel, merely by touting its internal procedures as the appropriate forum for resolving discrimination complaints. *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752-53 (D.C. Cir. 1998). The plaintiff in *Washington* filed an internal complaint with his employer's Office of Civil Rights ("OCR"), claiming age and race discrimination and retaliation. *Id.* at 751. The OCR rendered a decision rejecting the plaintiff's allegations, stating that he could file an administrative complaint within 180 days of the last instance of discrimination. *Id.* Yet the 180-day period had already lapsed during the period of the OCR's investigation. *Id.* at 753. In opposition to the employer's motion for summary judgment, the plaintiff argued that the defendant should have been equitably estopped from asserting that the plaintiff's claims were time-barred because the employer had touted its internal procedures as the appropriate forum for resolving his discrimination complaint, lulling him into presuming that he had met the requirements for pursuing his claim. *Id.* at 752. The Circuit rejected the argument, holding that the plaintiff had failed to demonstrate any affirmative misconduct on the part of the employer. *Id.* at 753.

Like the plaintiff in *Washington*, the plaintiff in this case relied upon her employer's direction to use its internal grievance procedures to adjudicate her discrimination claims.[4] Pl.'s Opp'n at 6-7. *Washington* makes clear that such an instruction does not, standing alone, constitute affirmative misconduct justifying equitable estoppel. *Washington*, 160 F.3d at 752-53.

---

[4]     The Office of the Special Inspector was established to operate "within the [DOC]" to supplement its flawed internal grievance procedures for sexual harassment and retaliation claims. *Neal v. Dir., D.C. Dep't of Corr.*, 1995 WL 517244, at *2-3 (D.D.C. Aug. 9, 1995).

Yet the plaintiff's allegations diverge from the facts of *Washington* in several key respects.  First, the plaintiff in this case states in her affidavit that Deputy Warden Corbett told her not only that she should file her complaint with the Office of the Special Inspector, but also that she "was not allowed to file a complaint anywhere else or to file a lawsuit prior to filing with the Office of the Special Inspector."  Pl.'s Aff. ¶ 3.  Other supervisors allegedly gave the plaintiff similar instructions.  2d Am. Compl. ¶ 17.  In addition, unlike the plaintiff in *Washington*, the plaintiff in this case maintains that she contacted the DCOHR shortly after receiving the results of the Special Inspector's report, Pl.'s Aff. ¶¶ 6-7, arguably demonstrating the type of diligence absent in that case, *see Washington*, 160 F.3d at 753 (noting that the plaintiff failed to demonstrate diligence by waiting five months after receiving the results of the OCR letter to file an administrative complaint); *see also Bowden*, 106 F.3d at 438 (observing that "courts have excused parties, particularly those acting *pro se*, who make diligent but technically defective efforts to act within a limitations period") (citing *Irwin*, 498 U.S. at 96).  Furthermore, whereas the plaintiff in *Washington* was represented by counsel during at least part of the filing period, it is unclear whether the plaintiff in this case was represented by counsel prior to the time she filed her administrative complaint.  *See generally* Pl.'s Opp'n.  Finally, the plaintiff's reliance on Corbett's instruction may well have been objectively reasonable, in light of the fact that the Office of the Special Inspector was established by court order and operated with a degree of autonomy from the DOC.  *See Neal*, 1995 WL 517244, at *3 (stating that "[i]n order to achieve the independence and impartiality required to restore confidence in the protections against sexual harassment and retaliation at the Department, the [Special Inspector] shall operate independently of all Departmental

staff, including the Director"). Under these unique circumstances, the court cannot conclude that the plaintiff's complaint on its face is conclusively time-barred. *See Firestone*, 76 F.3d at 1209. Thus, the court denies the defendant's motion to dismiss the complaint as time-barred.

As for the defendant's motion in the alternative for summary judgment, the court notes that when the instant motion was fully submitted, the parties had yet to develop the factual underpinning of this case through discovery. Indeed, the plaintiff's equitable estoppel argument is, at present, supported by nothing more than the spare allegations set forth in her complaint and affidavit. *See* Pl.'s Opp'n at 6-10; *see also* Pl.'s Aff. ¶¶ 3-4. These allegations are silent as to several matters that could be relevant to the resolution of the timeliness issue, such as the dates on which the incidents of sexual harassment occurred, the specific nature of the comments made by Corbett, Profit and other supervisors regarding how the plaintiff was required to proceed with her claim and whether the plaintiff was represented by counsel during any portion of this process. *See* Pl.'s Opp'n at 6-10; Pl.'s Aff. ¶¶ 3-4. As previously noted, it is the plaintiff's burden to prove that equitable considerations justify her noncompliance with the filing requirement. *See Bayer*, 956 F.2d at 332. Accordingly, the court denies the defendant's motion for summary judgment based on the plaintiff's failure to file a timely administrative charge, without prejudice to consideration of a renewed motion on these grounds after the parties have developed the factual record through discovery.

### B. The Plaintiff's Retaliation Claims

The plaintiff alleges that the defendant retaliated against her by refusing to separate her from Rodriguez after she complained about his harassing behavior, 2d Am.

Compl. ¶ 36, permitting her co-workers to direct negative comments towards her regarding her involvement in protected activity, *id*. ¶ 37, refusing to put her on light duty as recommended by her physician, *id*., placing her on unpaid leave after her medical condition forced her to take a leave of absence in late May 2006, *id*. ¶ 38, and ordering her to leave work and go home on November 27, 2006, *id*. ¶ 42.

The defendant contends that the plaintiff has failed to plead a prima facie case of retaliation insofar as she has failed to plead any facts to support her claim that she was placed on unpaid leave for retaliatory purposes. Def.'s Mot. at 6-7. In addition, the defendant argues that the plaintiff failed to exhaust her administrative remedies with respect to her claim that she was instructed to leave work on November 27, 2006.[5] *Id*. at 7.

The plaintiff maintains that she has stated a valid prima facie case of retaliation. Pl.'s Opp'n at 10-11. Furthermore, the plaintiff asserts that because her claim based on the events of November 27, 2006 is "like or reasonably related to" the allegations contained in her administrative charge, she adequately exhausted her administrative remedies. *Id*. at 11-12. In the alternative, the plaintiff argues that she need not exhaust her administrative remedies with respect to her retaliation claims. *Id*. at 12. The court addresses each of these issues in turn.

---

[5]     The defendant argues that the plaintiff's retaliation claims are time-barred. Def.'s Reply at 5-7. The court need not address these arguments, as they were raised for the first time in the defendant's reply memorandum. *See Cronin*, 73 F.3d at 1134. At any rate, the plaintiff's administrative charge alleges that the defendant continued to retaliate against her even as of the time she filed with the EEOC in August 2006. *See* Def.'s Mot., Ex. 4. Accordingly, the court cannot conclude from the face of the pleadings that the plaintiff's retaliation claims are conclusively time-barred. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

### 1.  The Plaintiff Has Pleaded a Legally Cognizable Retaliation Claim Based on Her Placement on AWOL Status

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse and (3) there existed a causal connection between the protected activity and the materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  The plaintiff's burden is not great: she "merely needs to establish facts adequate to permit an inference of retaliatory motive."  *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).  Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'"  *Id.* (quoting *Burlington N.*, 548 U.S. at 64, 68).

The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity."  *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse

action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all").

Plainly, the plaintiff engaged in protected activity when she lodged a complaint with the Office of the Special Inspector on June 19, 2005, assisted in the Special Inspector's investigation and contacted the DCOHR to pursue her claim. *See* 42 U.S.C. § 2000e-3(a) (prohibiting adverse employment actions based on the fact that an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]"). It is equally clear that placement on unpaid leave status constitutes a materially adverse employment action. *See Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (holding that an employee suffered a materially adverse employment action when she was temporarily placed on AWOL status despite the fact that she was ultimately given back-pay for the period of her absence).

The sole issue before the court, therefore, is whether the plaintiff has adequately pleaded the existence of a causal connection between her involvement in protected activity and her placement on leave without pay. The record before the court does not make clear precisely when the plaintiff was placed on unpaid leave, when her participation in the Special Inspector's investigation concluded or whether officials within the DOC were aware that she had contacted the DCOHR. *See generally* 2d Am. Compl. Yet, drawing all reasonable inferences in favor of the plaintiff, these allegations suggest that the defendant placed the plaintiff on unpaid leave shortly after, and because, she engaged in protected activity. At this early stage of the proceedings, such allegations are sufficient to survive a motion to dismiss. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (observing that "in order to survive a motion to dismiss, all [the]

complaint has to say . . . is 'the [defendant] retaliated against me because I engaged in protected activity'") (quoting *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1114 (D.C. Cir. 2000)); *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007) (holding that "[a]t this early stage of the proceedings, plaintiff can meet her *prima facie* burden of causation simply by alleging that the adverse actions were caused by her protected activity"); *see also Swierkiewicz*, 534 U.S. at 511-14 (holding that the plaintiff need not plead all elements of his prima facie case in the complaint); *Beckham v. Nat'l R.R. Passenger Corp*., 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (denying the defendant's motion to dismiss based on lack of temporal proximity because the plaintiff had satisfied her burden at that early stage of the proceedings). Thus, the plaintiff's failure to specify in her complaint the precise dates of her involvement in protected activity does not warrant dismissal of her complaint at this juncture. Accordingly, the court denies the defendant's motion to dismiss the plaintiff's retaliation claim.

### 2. The Plaintiff's Retaliation Claim Should Not Be Dismissed for Failure to Exhaust Administrative Remedies

Prior to the Supreme Court's decision in *Morgan* in 2002, courts generally held that a plaintiff was not required to separately exhaust her administrative remedies for retaliation claims arising after the filing of an administrative complaint. *See McKenzie v. Ill. Dep't of Transp*., 92 F.3d 473, 482-83 (7th Cir. 1996); *Gupta v. East Tex. State Univ*., 654 F.2d 411, 414 (5th Cir. 1981); *Sussman v. Tanoue*, 39 F. Supp. 2d 13, 21 (D.D.C. 1999); *Webb v. District of Columbia*, 864 F. Supp. 175, 184 (D.D.C. 1994). These decisions implemented the "continuing violation doctrine," under which an administrative charge was construed to encompass all claims "like or reasonably related to" the allegations contained in the charge. *See Park*, 71 F.3d at 907.

In *Morgan*, however, the Supreme Court rejected the "continuing violation doctrine," holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 113. *Morgan* thus made clear that claims based on discriminatory or retaliatory acts that occurred more than 180 or 300 days before the filing of the administrative charge are time-barred, regardless of whether they are "like or reasonably related to" allegations contained in the administrative charge.  *Id.*

Circuit courts, as well as judges within this district, have since reached differing conclusions on whether *Morgan* requires a plaintiff to separately exhaust her administrative remedies for retaliation claims arising after the filing of the administrative complaint.  *See Hernandez v. Gutierrez*, 2009 WL 2998115, at *3 (D.D.C. Sept. 19, 2009) (noting the disagreement among the courts).  Although this Circuit has yet to address this precise issue, *see Weber v. Battista*, 494 F.3d 179, 183-84 (D.C. Cir. 2007), the Eighth Circuit has held that *Morgan* does not require a plaintiff to separately exhaust her administrative remedies "where the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature," *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673 (8th Cir. 2006) (stating that *Morgan* required the court to "narrow[] its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charge" but did not require the court to "wholly abandon[] the theory that reasonably related subsequent acts may be considered exhausted").  The Tenth Circuit, on the other hand, has interpreted *Morgan* broadly to require exhaustion of remedies for related "incidents occurring after the filing of [the] plaintiff's EEO complaint."  *Martinez v.*

*Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (concluding that "*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with a framework where each discrete incident of discriminatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted").

This court is persuaded by the Eighth Circuit's reasoning.  *See Hazel v. Washington Metro. Area Transit Auth.*, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006) (Roberts, J.) (adopting the Eighth Circuit's reasoning observing that "[i]t would be no surprise if the D.C. Circuit adopted the analysis of *Wedow*").  So long as the allegations underlying the plaintiff's retaliation claims "were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature," *Wedow*, 442 F.3d at 673, her failure to separately exhaust her administrative remedies will not serve as a bar to suit.

Although the plaintiff's administrative charge appears to allege retaliatory acts of an ongoing and continuing nature, *see* Def.'s Mot., Ex. 4,[6] the incompleteness of the factual record prevents the court from determining at this juncture whether the allegations in question were "of a like kind" to the retaliatory acts alleged in the EEOC charge.  The complaint states only that on November 27, 2006, the plaintiff returned to work, at which time "she was further harassed and retaliated against by co-workers and supervisors" and that "[w]ithin two (2) hours of reporting to work on that date, the Major on duty instructed her to leave the premises and go home."  2d Am. Compl. ¶ 42.  The plaintiff's

---

[6]     The administrative charge states that "the DOC continues to retaliate against [her] by insisting that she continue to work at the DC Jail with Mr. Rodriguez" and that "when she works at the DC Jail many of her co-workers tell her that she did the wrong thing by filing a complaint against Mr. Rodriguez."  Def.'s Mot., Ex. 4.

opposition offers no additional detail regarding the nature of the retaliation and harassment she suffered, nor does it describe why she was instructed to leave work.  *See* Pl.'s Opp'n at 11-12.

Given the number of potentially pertinent factual issues that remain unresolved, the court cannot conclude on the basis of the pleadings alone that the plaintiff failed to exhaust her administrative remedies.  *See Payne v. Salazar*, 628 F. Supp. 2d 42, 52 n.9 (D.D.C. 2009) (concluding that a "motion to dismiss for exhaustion is more appropriately treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6)").  The court, therefore, denies the defendant's motion to dismiss this claim for failure to exhaust administrative remedies.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss the plaintiff's Title VII sexual harassment claims as time-barred, denies without prejudice the defendant's motion for summary judgment on the same issue and denies the defendant's motion to dismiss the plaintiff's Title VII retaliation claims.  The court, however, grants the defendant's motion to dismiss the DCHRA and IIED claims.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2009.


RICARDO M. URBINA
United States District Judge